J-S12020-19 & J-S12021-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.L.R., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 256 MDA 2018 |

Appeal from the Decree January 8, 2018
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s): A-8472

| | | |
|---|---|---|
| IN THE INTEREST OF: J.J.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.L.R., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 257 MDA 2018 |

Appeal from the Decree January 8, 2018
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s): A-8473

BEFORE: BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.: **FILED MAY 15, 2019**

K.L.R. ("Mother") appeals the Decrees entered January 8, 2018, involuntarily terminating her parental rights to her minor son, J.J.H. (born January 2010), and minor daughter, J.M.H. (born February 2014)

("Children").[1]  Because the record supports the decision of the trial court, we affirm the involuntary termination of Mother's parental rights.[2]

**FACTS AND PROCEDURAL HISTORY**

We glean the following relevant facts and procedural history from the certified record.  In February of 2015, Luzerne County Children and Youth Services ("CYS") obtained emergency shelter care orders for Children placing Children in CYS's care due to mental health issues, substance abuse, and domestic violence.[3]

Mother initially participated in services offered by CYS to promote reunification, including parenting services; toxicology screens; mental health services;[4] and drug and alcohol evaluation and treatment.  Between February 2015 and August 2016, Mother sporadically attended her mental health

---

[1] The court also involuntarily terminated the parental rights of Children's father, M.H. ("Father").  Father appealed the termination decrees at Docket Nos. 308 MDA 2018 and 1723 MDA 2018, which we address in a separate memorandum.

[2] The Decrees themselves misstate the year as 2017, which we conclude was a ministerial error.  As noted *infra*, we affirm the involuntary termination of Mother's parental rights, but remand for the court to correct the year on the Decrees.

[3] Father was convicted and incarcerated in connection with his repeated physical abuse of J.J.H., which included breaking J.J.H.'s femur.

[4] Mother had a psychiatric evaluation done on March 30, 2015, and started therapy and medication soon thereafter.  See N.T., 3/30/17, at 27.

appointments, and "missed more appointments than she attended". *See* N.T., 3/30/17, at 30.

Although Mother lived in a couple different shelters, she was able to move into an apartment and in October 2015, Children were returned to her care. However, after only 11 days Children were again removed from her care. During this short time, J.J.H. reported that Mother left the Children in the care of her paramour, who was involved in selling illicit drugs. *See id.* at 63. Additionally, during an altercation between Mother and J.J.H., Mother threw a toothbrush at J.J.H., hitting him in the head and leaving a small lump. *Id*.

Mother's participation in services then declined markedly. She admitted to her caseworker and parenting educator in November 2015 that she was using drugs and alcohol. In late 2015, Mother stopped attending her parenting program so that she could "get her life put back together." N.T., 3/30/17, at 52.

Eighteen months after Children's initial placement, CYS filed petitions to involuntarily terminate Mother's and Father's parental rights to Children, alleging that Mother failed to remedy her addiction, mental health, and parenting issues. The court conducted six hearings on the termination petitions over the course of seven months, beginning on March 30, 2017.[5]

_____

[5] Two of the hearings also included proceedings in the related dependency cases. Mother did not appeal the dependency dispositions.

Throughout the hearings, Mother was represented by counsel.[6]   CYS focused only on the grounds provided in 23 Pa.C.S. § 2511(a)(8) against Mother.

Sherri Hartman, the CYS caseworker, testified regarding, *inter alia*, her contacts with Mother, Father, and Children, the services offered to Mother, and Mother's failure to complete or participate fully in those services. She also testified regarding the bond Children had with Mother and with Foster Parents.

Lisa Ross, a parent educator with Concern Incorporated, testified about her work with Mother between April 2015 and November 2015, stating that Mother initially was very cooperative and "did really well" which allowed Children to be returned to Mother for 11 days in October 2015.  **N.T.**, 3/30/17, at 51. Ms. Ross also testified that she began to see Mother fall into a "downward spiral" in November 2015, and noted that although Mother had initially participated in drug and alcohol rehabilitation, in early November 2015, Mother acknowledged to her that that she had been drinking and using

---

[6] The court appointed both a Guardian *Ad Litem* and a Child Advocate to represent Children at the termination proceedings. Although the trial court appointed a Child Advocate, this was unnecessary because there was not a conflict between the children's best and legal interests: J.M.H., who was three years old at the time of the hearings, was too young to express a preference; J.H.H. was seven years old and expressed his preference to numerous individuals, including his therapist, his caseworker, and his guardian *ad litem*, to remain in his pre-adoptive home and not to see Mother anymore.  Accordingly, the failure of the Child Advocate to appear at the termination hearings is immaterial because there was no conflict between Children's legal and best interests.

marijuana again. Ms. Ross also testified that after October 2015, Mother was "totally withdrawn from any form of communication" with Ms. Ross, and Mother asked to put her parenting services on hold. *Id.* at 62. Mother did not begin parenting classes again until after August 2016.

Alicia Singer, a senior clinician at Community Counseling Services that provided mental health counseling services for Mother, testified that Mother attended scheduled counseling and psychiatric appointments sporadically. Most importantly, Ms. Singer testified that Mother did not complete her mental health services.

Mother testified on her own behalf regarding her participation in the services provided by CYS, her employment during the twelve months prior to the filing of the petition, and her living arrangements. *See generally* N.T., 10/16/17, at 16-20; 10/19/17, at 12-25; and 7/10/17, at 9-53.

After the hearing on October 19, 2017, the court took the matter under advisement. On January 8, 2018, the court issued Decrees involuntarily terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(8) and (b). Mother timely appealed, and simultaneously filed Concise Statements of Errors Complained of on Appeal in accordance to Pa.R.A.P. 1925(a)(2).

Mother raises the following issues on appeal:

1. Did the trial court abuse its discretion, commit an error of law, and/or there was insufficient evidentiary support in terminating the parental rights of the natural mother of [Children], as the grounds pursuant to 23 Pa.C.S.A. § 2511(a)(8) were not established by clear and convincing evidence, and such

granting of a petition to terminate parental rights was against the weight of the evidence presented by the parties[?]

2. Did the trial court abuse its discretion, commit an error of law, and/or there was insufficient evidentiary support for the court's decision that the best needs and welfare of [Children] would be served by terminating natural mother's parental rights as required by 23 Pa.C.S.A. § 2511(b)[?]

Mother's Brief at 3 (unnecessary capitalization and suggested answers omitted).

In reviewing cases involuntarily terminating parental rights, appellate courts must accept the findings of fact and credibility determinations of the trial court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. (citations omitted). Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result. *In re Adoption of Atencio,* 650 A.2d 1064, 1066 (Pa. 1994).

> We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted). We defer to the trial court that often has "first-hand observations of the parties spanning multiple hearings." *In re T.S.M*., *supra* at 267 (citations and quotation marks omitted). Importantly, "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time . . . in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care." *In re Adoption of R.J.S.,* 901 A.2d 502, 513 (Pa. Super. 2006) (emphasis in original; citations omitted).

In addressing Petitions to Involuntarily Terminate Parental Rights, the Adoption Act[7] requires courts to conduct a bifurcated analysis. Pursuant to Section 2511, the court first focuses on the conduct of the parent. If the party seeking termination presents clear and convincing evidence that the parent's conduct meets one of the grounds for termination set forth in Section 2511(a), then the court will analyze whether termination of parental rights will meet the needs and welfare of the child, *i.e.*, the best interests of the child, as provided in Section 2511(b). 23 Pa.C.S. § 2511(a) and (b); *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). "One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent

---

[7] 23 Pa.C.S. §§ 2101-2938.

and child, with close attention paid to the effect on the child of permanently severing any such bond." *Id.* at 511 (citations omitted).

**Termination Pursuant to Section 2511(a)(8)**

The trial court in the instant case concluded that CYS met the grounds for termination set forth in 23 Pa.C.S. § 2511(a)(8). This provision provides that a court may terminate parental rights if the agency proves with clear and convincing evidence that "[t]he child has been removed from the care of the parent by the court or by voluntary agreement . . . , 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist, and termination of parental rights would best serve the needs and welfare of the child." 23 Pa.C.S. § 2511(a)(8). "Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services." *In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010) (citations omitted). "[W]here a parent has addressed some of the conditions that led to a child's removal, but other conditions still exist, this element may be deemed to be satisfied." *In re D.A.T.*, 91 A.3d 197, 205–06 (Pa. Super. 2014). *See also In re Adoption of R.J.S.*, 901 A.2d at 513 (recognizing "that the application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children," but noting "the statute implicitly recognizes that a

child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities.").

"A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003) (citation and internal quotation omitted). The court "may not consider any effort by the parent to remedy the conditions described in subsection[ ](a)(8) if that remedy was initiated after the parent was given notice that the termination petition had been filed." *In re Z.P.*, 994 A.2d at 1121 (citation omitted). The court, however, may consider post-petition efforts if the efforts were initiated before the filing of the termination petition and continued after the petition date. *Id.*

In addition, Section 2511(a)(8) explicitly requires an evaluation of the "needs and welfare of the child," in addition to the behavior of the parent, prior to moving onto the Section 2511(b) analysis. *In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*) (citations omitted).

Here, Mother contends that the evidence was insufficient to terminate her parental rights under Section 2511(a)(8) because the Agency did not present evidence "of what the mental health concerns were nor why these concerns prevented her from parenting her children." Mother's Brief at 19.

She also avers that CYS did not establish that Mother could not properly parent Children, and did not establish the specific parenting concerns that caused the initial referral. *Id.* at 18-19.[8] Mother concludes that the "trial court's determination . . . was against the weight of the evidence and an abuse of discretion." Mother's Brief at 19.

The trial court in this case explained its determination that CYS met its burden of proof with respect to Section 2511(a)(8), in part, as follows:

> The [c]ourt . . . concludes that Mother failed to derive any benefit from services offered to her for her mental health issues and parenting issues. The [c]ourt finds Mother's mental health issues and parenting issues were not remedied by Mother since the initial date of placement. Although Mother attempted to seek treatment to address her mental health issues and parenting issues, **Mother failed to complete the services**. Furthermore, the court finds that Mother's relationship with J.J.H. did not serve his best interest. J.J.H. was undergoing trauma therapy and Mother exacerbated the situation by advising J.J.H. to do "bad things" so that he could return home faster. This certainly makes the court question Mother's stability, parenting ability, and mental state in light of Mother failing to appreciate J.J.H.'s undergoing trauma therapy and not recognizing that her advice to do "bad things" only made the child regress in his behavior. Therefore, the court finds that the conditions of 1) Mother's mental health issues and

---

[8] Mother also contends that the trial court should have permitted testimony regarding the post-petition efforts Mother made at parent training because she had started the program prior to the filing of the termination petition. Mother's Brief at 19. Although the court noted that it would not allow testimony from Ms. Ross on the efforts Mother made after the Petition was filed, Mother herself testified about her post-petition actions. She testified that, although she stopped attending parenting classes December 2015, she tried to restart her classes but was unable to do so until August 2016. She also testified that she finished the parent training services in June 2017. N.T., 7/10/17, at 50.

2) Mother's parenting ability (including those which gave rise to placement) continue to exist.

Trial Court Opinion, 3/8/18, at 14-15 (emphasis added).

Contrary to Mother's arguments, the record supports the trial court's conclusion that CYS met its burden of proof with respect to Section 2511(a)(8). Mother concedes that Children had been removed from her care for at least twelve months. *See* Mother's Brief at 13. In addition, the trial court found credible the evidence showing that conditions that led to the removal or placement of Children still existed when CYS filed the petition, and weighed the testimony and analyzed Children's needs to reach its conclusion that termination of Mother's parental rights would best serve the needs and welfare of Children.

Mother's argument that CYS did not establish what her mental health diagnosis was or how it related to the removal of Children does not change the fact that she did not finish the services she acknowledged were necessary in order to regain custody of her children. The trial court adjudicated Children dependent as a result of, *inter alia*, Mother's mental health and parenting issues. The record supports the trial court's finding that Mother did not attend mental health treatment as often as the mental health specialists recommended and that Mother stopped attending parenting classes. It was, thus, reasonable for the trial court to conclude that Mother did not significantly address her mental health and parenting issues and, thus, the conditions that led to Children's removal still existed. *See* Section 2511(a)(8).

Additionally, as discussed in more detail below, the record supports the trial court's determination that terminating Mother's parental rights would best serve the needs and welfare of Children.[9]  Accordingly, the court did not err or abuse its discretion in concluding that CYS had established grounds for termination under Section 2511(a)(8).

**Termination pursuant to Section 2511(b)**

With respect to Section 2511(b), we consider whether termination of parental rights will best serve Children's developmental, physical, and emotional needs and welfare.  *See In re Z.P.*, 994 A.2d at 1121.  "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship."  *Id.*  "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment."  *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

It is sufficient for the trial court to rely on the opinions of social workers and caseworkers when evaluating the impact that termination of parental

---

[9] We discuss the trial court's needs and welfare analysis conducted pursuant to Section 2511(a)(8) in conjunction with our review of Section 2511(b).

rights will have on a child.  *In re Z.P.*, *supra* at 1121. The trial court may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.  *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011).  Ultimately, the concern is the needs and welfare of a child.  *In re Z.P.*, *supra* at 1121.

In this case, Mother argues that the evidence presented by CYS consisted "merely of statements of the caseworker," and faults the trial court for focusing on the failure of Mother to remedy the conditions that led to placement, as well as on the fact that Foster Parents and Children have a strong bond and the Foster Parents meet the daily physical, emotional, and medical needs of Children.  Mother's Brief at 21.[10]   Mother does not cite to the Notes of Testimony, and completely ignores evidence presented by the witnesses other than Ms. Hartman.

---

[10] Mother also contends that the trial court failed to consider "how the best needs and welfare of the child could be met if the child were permitted to relocate with the [n]atural [m]other and how this could positively affect minor child J.J.H.'s mental health treatment."  Mother's Brief at 21, 23.  Mother's Brief does not provide any citation to the record for her contention that she anticipated moving, let alone how it would impact J.J.H.'s therapy, and our review of the record failed to disclose any such testimony.  Due to Mother's failure to provide a citation for the factual basis of this assertion, she has waived this argument.  *See* Pa.R.A.P. 2119(c); *see also J.J. Deluca Co. v. Toll Naval Assocs.*, 56 A.3d 402, 413 (Pa. Super. 2012) (reiterating that a failure to present any record citation to support a claim results in waiver). Additionally, this contention is purely speculative.  Since Mother failed to address her mental health issues while Children were in care, she was unable to care for them and the trial court would not permit Children to "relocate" with Mother.

As the trial court observed, "[CYS] presented credible testimony regarding the needs, welfare and best interest of [Children] in relation to their Mother[.]" Trial Ct. Op., 3/8/18, at 16-18 (detailing the relevant testimony presented at the hearings). The court emphasized Ms. Hartman's testimony, noting that she identified a bond between Mother and J.M.H., but it was more in the nature of a "play date" bond. *Id*. at 17. The court also placed great weight on Ms. Hartman's testimony that although there is a bond between J.J.H. and Mother, J.J.H. has a lot of anger towards Mother for not completing her services and requested that his visits with Mother be terminated. *Id*. at 17-18.

The court also noted that CYS presented evidence that Children are thriving in their pre-adoptive foster home, where they have a very strong bond akin to a parent/child bond with the Foster Parents, and both children go to the Foster Parents for their needs, affection, comfort and love. *Id*., citing Notes of Testimony. The court observed that Children have been in placement since February 9, 2015, "a reasonable time of 18 months has long expired to remedy parental incapacity, and there is little rational prospect of the timely reunification of J.J.H. and J.M.H. and their mother." *Id*. at 20. Finally, the court agreed with Ms. Hartman's assessment that Children would "positively benefit" from the termination of Mother's parental rights. *Id*., at 17-18.

Our review of the record supports the trial court's determination and we discern no abuse of discretion or error of law. We, thus, affirm the court's

determination that involuntarily termination of Mother's parental rights is in the best interests of Children.

Decrees affirmed. Cases remanded for the ministerial correction of the year of the Decrees from 2017 to 2018. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/15/2019